**Bilotta v. Palmer Township Athletic Association**

*Philip D. Lauer,* for plaintiff.
*Donald S. Himmelreich,* for defendant.

WILLIAMS, JR., *P.J.,* November 30, 1984.

### ADJUDICATION

This matter is before the court on plaintiff's complaint in equity seeking injunctive and declaratory relief from defendant. Plaintiff, Peter Bilotta, alleges that the Palmer Township Athletic Association has wrongfully refused to consider him for the position of coach of defendant's 1984 girls' softball league. Plaintiff contends that defendant's admitted policy of precluding men, in the first instance, from coaching the girls' teams is in violation of the laws of the Commonwealth of Pennsylvania and the United States of America. Defendant counters that valid and justifiable reasons exist for its policy that women should coach the girls' teams if at all possible and that, accordingly, its policy does not violate the laws of the Commonwealth of Pennsylvania, the United States of America or any other jurisdiction.

The matter was heard without a jury on September 26, 1984, before Williams, Jr., P.J., and the parties were given leave to file memoranda of law with the court. After careful review of the entire record, we make the following:

### FINDINGS OF FACT

1. Plaintiff, Peter Bilotta, is an adult individual who resides at 2205 Hackett Avenue, Palmer Township, Northampton County, Pa.

2. Defendant, the Palmer Township Athletic Association, is a non-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania, operated for the purpose of promotion of athletics for Palmer Township residents, with its principal place of business located at the Palmer Township Municipal Building, 3245 Freemansburg Avenue, Palmer Township, Northampton County, Pa.

3. The Township of Palmer, a political subdivision in Northampton County, Pa., has, by ordinance adopted March 1, 1954, and thereafter amended, provided for the creation of a township recreation board empowered to implement a recreation program.

4. The Township of Palmer makes an annual donation to defendant, which donation is used by defendant to meet a portion of its expenses.

5. Defendant operates its softball league and other athletic programs on lands owned or leased by the Township of Palmer and with the permission of the township.

6. Plaintiff is a member of the Palmer Township Athletic Association.

7. Two of plaintiff's daughters play on defendant's girls' softball teams and plaintiff's wife has participated as a coach on defendant's girls' softball teams for four or five years.

8. Plaintiff's background in sports, particularly in softball and baseball, is extensive and plaintiff is familiar with the rules of softball.

9. In February of 1984, plaintiff applied for a coaching position with one of defendant's girls' softball teams.

10. Plaintiff was denied a position as a girls' softball coach based upon defendant's longstanding

policy that women will be chosen to coach girls' teams if at all possible.

11. Defendant's girls' softball teams are, at the present time, coached only by women.

12. Defendant's girls' basketball teams are regularly coached by men.

13. Mr. James A. Spagnola, current president and 24-year member of defendant, testified that defendant's unwritten policy of preferring women coaches for the girls' teams has been in effect since 1953.

14. Spagnola indicated that defendant's policy has worked well over the years and that it is founded upon defendant's belief that such a policy is in the best interests of its members.

15. Defense witness Pat Fisher, women's athletic director and coach at Lafayette College, testified as to her opinion that female coaches tend to have a more positive influence on young female athletes than do male coaches, and that defendant's policy is generally a wise one.

16. However, Ms. Fisher qualified her opinion by noting, under cross-examination, that a determination should be made on an individual basis rather than solely on the basis of gender because there are good and bad coaches of both sexes.

17. Plaintiff testified that he was, and is, willing and able to coach one of defendant's girls' softball teams.

## DISCUSSION

Testimony at trial focused on defendant's contention that its longstanding policy of preferring female coaches for girls' teams is a wise and practical one, and plaintiff's contention that, for various reasons, it is neither wise nor practical. Such contentions are

not before us for resolution. We must determine only whether defendant's policy — wise, unwise, practical or impractical — is lawful.

Defendant maintains that its policy is valid and justifiable. It believes that women make better coaches for its girls' teams and therefore offers coaching positions for the girls' teams to women in the first instance. It is only when female coaches are not available that defendant offers those positions to men.

Plaintiff argues that such a policy is unjustifiable and that defendant's determinations, made solely on the basis of gender, constitute unlawful sexual discrimination under the Pennsylvania Equal Rights Amendment, the Pennsylvania Human Relations Act and the United States Constitution. After careful review of Pennsylvania appellate authority in this field, we must agree.

The Pennsylvania Equal Rights Amendment (Pa.ERA) and the Pennsylvania Human Relations Act (Pa.HRA) deal with equality of rights under the law. The Pa.ERA provides that:

"Equality of rights shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

Pennsylvania Constitution, Article I, Section 28 (1971). The Pa.HRA, as amended, declares, in relevant part, that:

"The practice or policy of discrimination against individuals or groups by reason of their . . . sex . . . is a matter of concern of the Commonwealth. . . ."

"It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their . . . sex, . . ., and to safeguard their right to obtain and hold employment without such discrimination, to assure equal

opportunities to all individuals and to safeguard their rights at places of public accommodation. . . ." 43 Pa.C.S. §952(a)(b). The Pa.HRA further provides that:

"The opportunity for an individual to obtain employment for which he is qualified, and to obtain all the accommodations, advantages, facilities and privileges of any place of public accommodation . . . without discrimination because of . . . sex . . . are hereby recognized as and declared to be civil rights which shall be enforceable as set forth in this act." 43 Pa.C.S. §953*.

The framework of these laws is complex and their applicability to a given situation is not automatic. One of the threshold criteria which must be met in either case is a finding that plaintiff somehow possesses a protectable right. We are guided by the reasoning and analysis of a Pennsylvania Commonwealth Court case, Packel v. Pa. Interscholastic Athletic Association, 18 Pa. Commw. 45, 334 A.2d 839 (1975). The Packel case involved a suit by female students who challenged a PIAA policy and by-law which precluded female students from engaging in certain athletic activities because such participation would have resulted in female athletes competing with and against male athletes. The Commonwealth Court found such an exclusion, despite PIAA arguments regarding potential harm, to be unjustifiable and therefore unlawful. It held that, although there may not be a fundamental right to engage in a particular activity, once the state decides to permit such participation, it must do so on a

---

* We note at this juncture that, although the remedial procedures set forth in the Pa.HRA are exclusive if invoked, they do not appear to preclude a suit such as this in the first instance. 43 Pa.C.S. §962.

basis which does not discriminate in violation of the constitution. Id. at 51.

The Commonwealth Court, in Packel, adopted the finding of an earlier decision whereby the actions of the PIAA were deemed to be state action because of the actual and economic relationship between the state and the PIAA. Harrisburg School District v. PIAA, 453 Pa. 495, 309 A.2d 353 (1973). Similarly, we have little problem in finding that defendant's policy can be considered state action in the constitutional sense of the word. Defendant conducts its athletic programs on lands owned or leased by the Township of Palmer and with the permission of the Township of Palmer. Defendant's principal place of business is located in the Palmer Township Municipal Building. The Township of Palmer is a political subdivision of Northampton County, Pa., and makes an annual donation to defendant, said donation used by defendant to meet a portion of its expenses.

Finally, we must decide whether such a policy is legally justifiable. To survive a constitutional challenge, gender-based discriminations must serve important governmental objectives and the discriminatory means employed must be substantially related to the achievement of those objectives. Oknefski v. Workmen's Compensation Appeal Bd., 63 Pa. Commw. 450, 439 A.2d 846 (1981). Such is not the case before us. Defendant defends its policy solely on the basis that "it is better to have women coaches for the girls' teams". However, defendant's own expert witness at trial admitted readily under cross-examination that there are good and bad coaches of both sexes and that a determination should be made on an individual basis. She testified on direct that women usually exhibit those characteristics most beneficial to coaching young girls,

and men usually do not, but such a generalization is not enough to justify defendant's discriminatory policy. Assuming, arguendo, that Ms. Fisher's generalization is correct, it is not sufficient to justify defendant's long-standing policy of precluding all men, in the first instance, from coaching the girls' teams. The existence of certain characteristics to a greater degree in one sex does not justify classification by sex rather than by those particular characteristics. Packel, supra at 52.

## CONCLUSIONS OF LAW

1. Jurisdiction lies in equity due to the nature of the harm alleged and the relief sought by plaintiff.

2. The Pennsylvania Equal Rights Amendment, Constitution of the Commonwealth of Pennsylvania, Article I, §28, directs that "equality of rights under the law shall not be denied or abridged . . . because of the sex of [an] individual."

3. The Pennsylvania Human Relations Act, 43 P.S. §951 et seq., read in conjunction with the ERA Implementation Legislation, 1 Pa. C.S. §2301, dictates a state-wide policy of preventing discrimination on any basis in the procurement of employment, public housing, public accommodations, etc.

4. Defendant's actions, performed with approval and support of the Township of Palmer, a political subdivision of Northampton County, Pa. constitute state action within the meaning of the Pennsylvania and United States Constitutions.

5. Although plaintiff does not have a fundamental legal right to coach defendant's girls' softball team, once defendant permits such participation, it must do so without discriminating in violation of constitutional provisions.

6. The existence of a certain characteristic to a greater degree in persons of one sex does not justify

classification by sex rather than by that particular characteristic.

## DECREE NISI

And now, this November 30, 1984, defendant's policy of precluding men in the first instance from positions as coach of defendant's girls' teams is declared unconstitutional. Defendant is hereby ordered to give equal consideration to both men and women for such positions.